**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────

SAMANTHA W.,

                                        Plaintiff,

          v.

                                                          No. 1:19-CV-398
ANDREW SAUL,                                              (CFH)
Commissioner of Social Security,

                                        Defendant.

─────────────────────────────────


**APPEARANCES:**                         **OF COUNSEL:**

Samantha W.
486 5th Avenue
Troy, New York 12180
Plaintiff pro se

Social Security Administration           TIMOTHY SEAN BOLEN, ESQ.
J.F.K. Federal Building,
15 New Sudbury Street, Rm. 625
Boston, Massachusetts 02203
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**


                    **MEMORANDUM-DECISION AND ORDER**[1]

        Plaintiff pro se Samantha W.[2] brings this action pursuant to 43 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner") denying her application for disability insurance benefits.  See Dkt. No. 1

─────────────────────────────

[1]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 5.

[2]  In accordance with guidance from the Committee on Court Administration and Case Management of
the Judicial Conference of the United States, which was adopted by the Northern District of New York in
2018 to better protect personal and medical information of non-governmental parties, this Memorandum-
Decision and Order will identify plaintiff by first name and last initial.

("Compl.").  Plaintiff moves for reversal and remand for the determination of benefits and, in the alternative, for further administrative proceedings, and the Commissioner cross moves for a judgment on the pleadings.  See Dkt. Nos. 15, 18.  For the following reasons, the determination of the Commissioner is affirmed.

# I. Background

On November 2, 2015, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income.  See T. at 140-43, 144-49.[3]  In both applications, plaintiff alleged a disability onset date of May 12, 2013.  See id. at 140, 144.  Both applications were denied on January 14, 2016.  See id. at 80-84.  Plaintiff requested a hearing, and a hearing was held on December 7, 2017, before Administrative Law Judge ("ALJ") Arthur Patane.  See id. at 36-53.  On April 4, 2018, the ALJ issued an unfavorable decision. See id. at 18-31.  On February 13, 2019, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner.  See id. at 1-3.  Plaintiff commenced this action on April 4, 2019.  See Compl.

# II. Applicable Law

## A. Scope of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g),

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 13.  Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

1388(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir.

1990).  Rather, the Commissioner's determination will only be reversed if the correct

legal standards were not applied, or it was not supported by substantial evidence.  <u>See</u>

<u>Johnson v. Bowen</u>, 817 F.2d 983, 985 (2d Cir. 1987); <u>Berry v. Schweiker</u>, 675 F.2d 464,

467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in

the record one can find "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31 (2d Cir. 2004)

(citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (internal citations omitted)).

The substantial evidence standard is "a very deferential standard of review

 . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable

factfinder would *have to conclude otherwise*."  <u>Brault v. Soc. Sec. Admin., Comm'r</u>, 683

F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is

reasonable doubt as to whether the Commissioner applied the proper legal standards,

the decision should not be affirmed even though the ultimate conclusion is arguably

supported by substantial evidence.  <u>See</u> <u>Martone v. Apfel</u>, 70 F. Supp. 2d 145, 148

(N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal

standards were applied and the ALJ's finding is supported by substantial evidence, such

finding must be sustained "even where substantial evidence may support the plaintiff's

position and despite that the court's independent analysis of the evidence may differ

from the [Commissioner's]."  <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)

(citation omitted).


**B. Determination of Disability**


3

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the

> [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

However, the Social Security Act, as amended in 1996, provides that "[a]n individual shall not be considered . . . disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 123 (2d Cir. 2012) (citing 42 U.S.C. § 1382c (a)(3)(J)).  Thus, "[w]hen there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis."  Cage, 692 F.3d at 123 (citing 20 C.F.R. § 416.935(a)); 20 C.F.R. § 404.1535(a); see SSR 13-2p, 2013 WL 621536, at *4.  In such cases, a secondary analysis must be conducted to determine whether the claimant's drug addiction or

alcoholism is material to the initial finding of disability.  See 20 C.F.R. § 404.1535(a).  A "key factor" under the secondary analysis is whether the claimant would still be found disabled if they stopped using drugs or alcohol.  Id. § 404.1535(b)(1).  In making this determination, the administrative adjudicators first determine whether physical and mental limitations would remain if the claimant stopped using drugs or alcohol, and if so, whether those remaining limitations are disabling on their own.  Id. § 404.1535(b)(2).  If so, claimants are considered disabled within the meaning of the Social Security Act notwithstanding their drug addiction or alcoholism.  Id. § 404.1535(b)(2)(ii).  If not, their drug addiction or alcoholism is considered material, and the claimant is not eligible for benefits.  Id. § 404.1535(b)(2)(i).


## II. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since May 12, 2013, the alleged disability onset date.  See T. 24.  At step two, the ALJ found that plaintiff that the following severe impairments: cannabis abuse and dependence, mood disorder, posttraumatic stress disorder, eating disorder, and borderline personality disorder.  See id.  At step three, the ALJ determined that plaintiff's impairments, including the substance use disorder, "meet sections 12.04 and 12.08 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d))."  Id. at 24.  The ALJ then found that if plaintiff "stopped the substance use, the remaining limitations would cause more than a minimal impact on [her] ability to perform basic work activities; therefore, [plaintiff] would continue to have a severe impairment or combination of impairments."

6

Id. at 25.  However, the ALJ also concluded that, "[i]f [plaintiff] stopped the substance use, [she] would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 . . . ."  Id.  The ALJ then went on to consider the remaining steps of the sequential evaluation.  Before reaching step four, the ALJ found that, if plaintiff stopped her substance use, she would have the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but would only have sufficient attention and concentration to perform the simple, routine tasks associated with unskilled work at an SVP of 1 or 2 and could only tolerate occasional interaction with supervisors, co-workers, and the public."  Id. at 26.  At step four, the ALJ found that, if plaintiff stopped the substance use, she would be unable to perform past relevant work.  See id. at 29. At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ determined that, "[i]f [plaintiff] stopped the substance use," "there would be a significant number of jobs in the national economy that [she] could perform."  Id.  Therefore, the ALJ determined that plaintiff's "substance use disorder is a contributing factor material to the determination of disability because [plaintiff] would not be disabled if she stopped the substance use."  Id. at 30.  Thus, the ALJ concluded, "[b]ecause the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision."  Id. at 30.

### III. The Parties' Arguments

Plaintiff argues that "[t]he Appeals Council should have reversed or remanded the [ALJ's] April 4, 2018 [u]nfavorable [d]ecision based on the 'new and material' evidence submitted from [her] treating psychiatrist, Charles VanMeter, MD." Dkt. No. 15 at 1.[4]  Plaintiff avers that Dr. VanMeter's opinion establishes that, contrary to the ALJ's RFC determination, her mental health impairments cause her to be disabled and preclude her from sustaining employment even when she abstains from using substances such as cannabis.  See id. at 3, 5, 6.  Plaintiff also contends that Dr. VanMeter's opinion contradicts the medical opinion evidence relied on by the ALJ in reaching his RFC determination and, therefore, reversal and/or remand for further assessment at the administrative level is necessary.  See id. at 1, 3-9.

The Commissioner concedes that Dr. Van Meter's opinion constitutes new evidence for which there was good cause for not presenting it earlier but argues that Dr. VanMeter's opinion is not material in that it would not likely change the ALJ's determination.  See Dkt. No. 18 at 4.  In particular, the Commissioner contends that Dr. VanMeter's opinion—a check-box form—indicating marked and extreme limitations is "divorced from the record and unaccompanied by any supporting evidence at all."  Id. Further, the Commissioner avers that "to the extent that Dr. VanMeter indicates that [p]laintiff was clean and sober throughout the relevant period, such an assertion is at odds with Plaintiff's own admissions," including plaintiff's testimony at the December 2017 hearing in which she admitted that she was using marijuana at that time.  See id. at 5.  Moreover, the Commissioner contends that plaintiff improperly challenges the

---

[4]  The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF at the headers of the page, not to the pagination of the individual documents.

Appeals Council's denial of review because that denial rendered the ALJ's decision the final agency decision.  See id. at 7.

## IV. Discussion[5]

### A.  Scope of Review of New Evidence

As a general matter, "[t]he Appeals Council is obligated to consider 'new [and] material' evidence that 'relates to the period on or before the date of the administrative law judge hearing decision.'"  Patterson v. Colvin, 24 F. Supp. 3d 356, 372 (S.D.N.Y. 2014) (quoting 20 C.F.R. § 404.970(b)).  New evidence is "material" if it is: "'(1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative.'"  Stratton v. Colvin, 51 F. Supp. 3d 212, 218 (N.D.N.Y. 2014) (quoting Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004)).

However, "[t]he Second Circuit [has] clearly stated that when new evidence is submitted to the AC and the AC denies review, the reviewing court's role is to review the entire administrative record, including the new evidence, and determine whether substantial evidence supported the Commissioner's final decision."  Canady v. Comm'r of Soc. Sec., 1:17-CV-0367 (GTS/WBC), 2017 WL 5496071, at *10 (N.D.N.Y. Oct. 4, 2017) (citing Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015) ("[N]ew evidence submitted to the [AC] following the ALJ's decision becomes part of the administrative record for judicial review when the [AC] denies review of the ALJ's decision." (internal quotation marks and citations omitted))), report & recommendation adopted, 1:17-CV-0367 (GTS/WBC), 2017 WL 5484663 (N.D.N.Y. Nov. 14, 2017).  Under those

---

[5]  All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

circumstances, the question becomes "whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require the AC to take the case." Canady, 2017 WL 5496071, at *11; see Patterson, 24 F. Supp. 3d at 373 ("[T]his requirement has been interpreted to mean that there must be a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." (internal quotation marks and citation omitted)).

Here, in seeking review of the ALJ's hearing decision, plaintiff submitted Dr. Van Meter's June 7, 2018 medical source statement and Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination to the AC.  See T. at 12-14, 15-17.  The Commissioner does not dispute that these reports—which were rendered after the ALJ's hearing decision—constitute "new evidence."  Dkt. No. 18 at 4.  Further, in denying review of the ALJ's decision, the AC noted that plaintiff "submitted a medical source statement of ability to do work related activities and a medical examination for employment assessment from Dr. Charles Van Meter, dated June 7, 2018 (5 pages)," but concluded that "this evidence d[id] not show a reasonable probability that it would change the outcome of the decision."  T. at 2.  Therefore, Dr. Van Meter's medical source statement and employment assessment became part of the administrative record when plaintiff submitted them to the AC and the AC denied review.  See Canady, 2017 WL 5496071, at *10.  Thus, as the Commissioner argues, because the AC denied review, the ALJ's hearing decision was the final agency decision.  See Dkt. No. 18 at 7.  Accordingly, the Court's scope of review is of this matter will be to determine "whether substantial evidence supports the ALJ's decision, when the new evidence is included in the

administrative record" and "the Court will not address plaintiff's arguments regarding the [AC]'s alleged errors in considering the new evidence."  Ryder v. Colvin, No. 1:15-CV-00241, 2015 WL 9077628, at *4 (W.D.N.Y. Dec. 16, 2015).

## B. Materiality of Substance Use

Affording the plaintiff's pro se pleadings a liberal construction, as the Court must,[6] she primarily contends that the ALJ erred in finding that her substance use was material to the determination of disability and that her newly submitted evidence establishes that her mental illness renders her disabled even when she abstains from substance use.  See Dkt. No. 15 at 3-7.  The Commissioner counters that, even considering plaintiff's newly submitted evidence, the ALJ's determination is supported by substantial evidence.  See Dkt. No. 18 at 4-5.

Where, as here, "the ALJ finds the claimant is disabled utilizing the five-step sequential analysis, and there is medical evidence of the claimant's drug addiction or

---

[6]  Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest.  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted); Abbas v. Colvin, No. 6:14-CV-0959 (GTS), 2015 WL 4078234, at *2 n.2 (N.D.N.Y. July 6, 2015) (applying special solicitude to the pro se plaintiff's arguments in his social security appeal).

11

alcoholism, the ALJ must then determine 'whether [the ALJ] would still find [the claimant] disabled if [she] stopped using drugs or alcohol.'" DiBenedetto v. Colvin, No. 5:12-CV-1528 (GLS), 2014 WL 1154093, at *2 (N.D.N.Y. Mar. 21, 2014) (quoting 20 C.F.R. § 404.1535(b)(1)).  In making this determination, the ALJ must evaluate which of the claimant's limitations would remain if she stopped using drugs or alcohol, and then determine whether any or all of the remaining limitations would be disabling.  See 20 C.F.R. § 404.1535(b)(2).  If the ALJ determines the claimant's remaining limitations would not be disabling, then the ALJ must find the substance use is a contributing factor material to the determination of disability and the claimant cannot be found disabled under the Act.  See id. § 404.1535(b)(2)(i).  The plaintiff "bears the burden of proof on the issue of whether her drug addiction . . . is material" to her disability.  Milks v. Colvin, No. 3:13-CV-1571 (GTS), 2015 WL 58382, at *4 (N.D.N.Y. Jan. 5, 2015) (citing Cage, 692 F.3d at 123-25).

As stated above, at step three of his sequential evaluation, the ALJ determined that plaintiff's impairments, including substance use disorder, meet listings 12.04 (Depressive, bipolar and related disorders) and 12.08 (Personality and impulse-control disorders).  See T. at 24.  To satisfy the requirements of listing 12.04, a claimant must establish the criteria set forth in either paragraphs A and B, or A and C of that section. See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.  As relevant here, paragraph A of Listing 12.04 may be satisfied by establishing

> (1) Depressive disorder, characterized by five or more of the following:
> a. Depressed mood;
> b. Diminished interest in almost all activities;
> c. Appetite disturbance with change in weight;
> d. Sleep disturbance;

> e. Observable psychomotor agitation or retardation;
> f. Decreased energy;
> g. Feelings of guilt or worthlessness;
> h. Difficulty concentrating or thinking; or
> i. Thoughts of death or suicide.

Id. at § 12.04(A)(1)(a)-(i).  Here, the ALJ concluded that the paragraph A criteria of Listing 12.04 was satisfied based on the medical source statement of Dr. Didio, a licensed psychologist who reviewed plaintiff's medical records in January 2018.  See T. at 24.  In particular, the ALJ noted that Dr. Didio's medical source statement concluded that plaintiff suffered from a "mood disorder characterized by symptoms including depressed mood, appetite disturbance with change in weight, sleep disturbance, difficulty concentrating, and suicidal ideations."  Id. at 24-25; see id. at 663 (Dr. Didio's medical source statement stating that plaintiff's conditions satisfied "A 1 a, c, d, h, i" of Listing 12.04).  The ALJ also concluded that "the evidence establishe[d plaintiff's] diagnosis of a mood disorder characterized by the requisite symptoms" based on his "own review of the record," and cited plaintiff's medical records from October 2012.  See id. at 25; see also id. at 260-61, 267 (plaintiff's hospital records from October 2012, indicating that plaintiff reported, among other things, frequent mood swings, periods of depression, restless sleep, poor concentration, suicidal thoughts, and cannabis dependence consisting of smoking "a couple of joints per week.").  Next, the ALJ determined that the paragraph C criteria was satisfied because

> the record establishes a medically documented history of the existence of a mood disorder of at least 2 years, with both [1] medical treatment, mental health therapy, psychological support, (or) a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder . . . ; and [2] marginal adjustment, that is, a minimal capacity to adapt to changes in the environment or to demands that are not already part of the claimant's daily life.

Id. (quoting 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04(C)(1)-(2)).  In reaching his paragraph C conclusion, the ALJ relied on the portion of Dr. Didio's medical source statement that checked the spaces on the form indicating that plaintiff satisfied both subsections of paragraph C criteria and stated that plaintiff "continues to participate in treatment; however, there has not been evidence of [her] ability to change or adapt."  Id. (quoting id. at 664).  The ALJ found that Dr. Didio's opinions in this regard were supported by plaintiff's medical records, including plaintiff's "consistently low (below 50)" Global Assessment of Functioning ("GAF") scores and the progress notes of Dr. VanMeter, who the ALJ stated "assessed [plaintiff] with poor or no ability to function in a variety of mental work-related areas, including responding appropriately to changes in a work setting, and dealing with stress."  Id. at 25.  Thus, the ALJ concluded, "considering all of the impairments, including [plaintiff's] substance use disorder, the paragraph A and paragraph C criteria of [L]isting 12.04 are satisfied, and the claimant's impairments therefore meet that listing."  Id.

To establish the paragraph B criteria under both Listing 12.04 and 12.08, a claimant must demonstrate an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning . . . :

> 1. Understand, remember, or apply information.
> 2. Interact with others.
> 3. Concentrate, persist, or maintain pace.
> 4. Adapt or manage oneself.

 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04(B)(1)-(4), 12.08(B)(1)-(4) (internal citations omitted).  Here, although the ALJ did not provide any discussion or analysis of paragraph B under Listings 12.04 or 12.08 at step three, other portions of the ALJ's

14

decision and record evidence referenced therein indicate that the ALJ considered the paragraph B criteria under Listings 12.04 and 12.08 and concluded that, with substance use, plaintiff's limitations met those criteria—which is sufficient for purposes of evaluating whether the ALJ's determination is supported by substantial evidence.  See Perozzi v. Berryhill, 287 F. Supp. 3d 471, 482-83 (S.D.N.Y. 2018) (explaining that "case law holds that a court has the power to uphold an ALJ's conclusion at step three of the analysis in the 'absence of an express rationale [where] portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence.'" (quoting Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982) (ellipsis omitted)).  In reaching his RFC determination, the ALJ expressly stated that Dr. Didio "opined that [plaintiff's] impairments meet [L]isting 12.04 and 12.08 with active substance use."  T. at 27.  Further, in making his RFC determination, the ALJ stated that he "duly considered listings 12.04, 12.06, 12.08, [and] 12.15," and concluded that, if plaintiff stopped using substances, her impairments would not meet or medically equal those listings "because neither paragraph B nor paragraph C criteria of th[o]se listings would be satisfied."  Id. at 26.  In addition, the ALJ provided a detailed analysis of Dr. Didio's opinion in support of his conclusion that, absent substance abuse, plaintiff "would no longer meet a listing [and] have at most moderate paragraph B functional limitations," specifically providing that Dr. Didio stated that plaintiff "would be only mildly limited in her ability to understand, remember, or apply information and adapt or manager herself and would be only moderately limited in her ability to interact with others and concentrate, persist, or maintain pace."  Id. at 27 (citing Id. at 662, 665).  Indeed, Dr. Didio's opinion specifically states that plaintiff's limitations satisfied Listing

12.04 paragraphs A 1 a, c, d, h, and i; B 1, 2, 3, and 4; and C 1 and 2; and Listing 12.08

paragraphs A and B.  See id. at 663.[7]  Moreover, the ALJ observed that Dr. Ochoa, a

state medical examiner who reviewed plaintiff's medical file in January 2016, opined

that, with respect to plaintiff's paragraph B criteria, even considering her history of "self-

medicat[ing] w[ith] cannabis," plaintiff had no more than moderate limitations.  Id. at 74.

Thus, although the ALJ could have been much clearer in detailing his reasoning, it

appears that he concluded that, with substance use, plaintiff's limitations met Listings

12.04 and 12.08, including the paragraph B criteria of both Listings.

However, in the absence of substance use, the ALJ determined that plaintiff

would only suffer mild or moderate difficulties with respect to the paragraph B criteria

under Listings 12.04 and 12.08.  See T. at 25-26.[8]  The ALJ stated that, absent

substance use, his conclusions concerning the paragraph B criteria were supported by

the "documented clinical findings on mental status examination following brief periods of

abstinence [from substance use], improved global assessment of functioning (GAF)

---

[7]  It appears that Dr. Didio mistakenly stated under his Listing 12.08 analysis that plaintiff's limitations satisfied paragraphs "B+C as above," as Listing 12.08 does not have a paragraph C.  See 20 C.F.R. pt. 404, Subpart P, App'x 1, § 12.08.

[8]  The ALJ also concluded that plaintiff's "remaining limitations would not cause at least two marked limitations or one marked limitation and repeated episodes of decomposition" and, therefore, "the paragraph B criteria would not be satisfied if claimant stopped the substance use."  T. at 26 (internal quotation marks omitted).  This is an outdated standard for assessing the paragraph B criteria, as the criteria the ALJ listed are no longer included in the paragraph B criteria contained in Listings 12.04 or 12.08.  See 20 C.F.R. Part 404, Subpart B, Appendix 1 §§ 12.04, 12.08; cf. Roman Jimenez v. Colvin, No. 12-CV-6001 (PGG/FM), 2014 WL 572721, at *7 (S.D.N.Y. Feb. 13, 2014) (applying former paragraph B criteria under Listings 12.03, 12.04, 12.06, and 12.08, and concluding that the plaintiff's impairments did not satisfy the paragraph B criteria because it did not "cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decomposition . . . ."), report and recommendation adopted sub nom. Jimenez v. Colvin, No. 12-CV-6001 (PGG/FM), 2016 WL 5660322 (S.D.N.Y. Sept. 30, 2016).  Thus, the ALJ erroneously referenced outdated paragraph B criteria under Listings 12.04 and 12.08.  However, this error was harmless.  Although the Listings have been amended at various times before and after the ALJ's hearing decision, it is clear from the ALJ's decision that, aside from the single erroneous reference, he correctly applied the paragraph B criteria for Listings 12.04 and 12.08 in effect as of March 14, 2018.  See T. at 24.

scores following brief periods of abstinence, and the uncontested medical opinions of" Dr. Didio and Dr. Ochoa.  Id. at 26.  The ALJ cited the portion of Dr. Didio's opinion in which he stated that, "absent substances, [plaintiff] would have moderate but less than marked impairments within social domain."  Id. at 665.  Notably, in rendering his opinion concerning plaintiff's paragraph B criteria, Dr. Didio observed that plaintiff "continued to be seen as abusing [and] dependent upon marijuana" and referred to the paragraph B criteria as the "social domain."  Id. at 662.  Indeed, aside from indicating that plaintiff would have a "[m]arked" limitation in her ability to "[i]nteract[] with [o]thers" while using substances, Dr. Didio selected either mild or moderate for all other paragraph B criteria, and opined that plaintiff's substance use "exacerbates mood instability as well as impairing social intercourse."  Id. at 659, 662.  Further, the ALJ cited Dr. Ochoa's opinion which indicated that plaintiff had no more than moderate limitations under the paragraph B criteria even with substance use, including that plaintiff manages her concentration issues that stem from her attention deficit hyperactivity disorder ("ADHD") with "non-stimulant Strattera (40mg daily)."  Id. at 74; see id. at 27, 73-74.

Moreover, the ALJ cited plaintiff's medical records from her inpatient treatment at Four Winds in 2011, which indicate that plaintiff's GAF score at the time of her admission was 35, 55 at the time of discharge, and 55 for the past year.  See T. at 210.  The ALJ stated that, "according to the *DSM-IV*, a GAF score of 55 is consistent with moderate (less than serious) symptoms or functional impairment."  Id. at 28.  In addition, the ALJ cited the findings of plaintiff's mental status examination upon discharge from Four Winds following a period in "which she presumably had no opportunity to engage in cannabis use," and indicated that plaintiff appeared "well-

nourished, well developed," with an "attentive attitude, appropriate motor behavior, spontaneous speech, normal mood, normal affect, appropriate perceptions, clear and organized thought process, appropriate thought content, no suicidal or homicidal ideation, orientation to person/place/time/situation normal, normal attention span, fair insight and judgment, good impulse control."  Id. at 28, 209-10.  Thus, the ALJ concluded that, during the approximately two-month period of plaintiff's inpatient treatment at Four Winds between June 21, 2011, and August 5, 2011—a time in which she abstained from using cannabis—her mental status and GAF score improved.  See id.; see id. at 208, 210.

The ALJ also concluded that, absent substance use, plaintiff's limitations would not satisfy the paragraph C criteria under Listing 12.04.  See T. at 26.  Concerning paragraph C criteria under Listing 12.04, the ALJ concluded that, without substance use, plaintiff "would no longer have minimal capacity to adapt to changes in her environment or demands . . . not already part of her life" based on Dr. Didio's opinion that "absent substances, [plaintiff] would not meet the C criteria."  Id. at 26 (quoting id. at 665).  In addition, the ALJ observed plaintiff's history of medication and treatment non-compliance, as evidenced by Dr. VanMeter's progress notes, and concluded that "[j]ust as the record indicates increased symptoms and decreased functioning with active substance use, it likewise indicates increased symptoms and decreased functioning when non-compliant with treatment."  Id. at 28.  For example, the ALJ cited Dr. VanMeter's progress note from January 29, 2013, that indicated that "medication and treatment compliance appear[ed] to be an issue at [that] time," and observed an increase in plaintiff's symptoms, including anxiety, depression, panic attacks, and

trouble sleeping.  Id. at 281.  In comparison, the ALJ cited Dr. VanMeter's May 13, 2016 progress note, which indicated that when plaintiff "made a significant effort . . . to reengage in care and comply with medications," she reported her symptoms, including anxiety, to be "manageable" and "under control."  Id. at 494.  Thus, the ALJ concluded that the medical opinion evidence and medical records demonstrate a "significantly higher maximum [RFC] with abstinence and treatment compliance" than plaintiff's subjective complaints suggest.  Id. at 28.

## 1. The ALJ's Materiality of Substance Abuse Determination

"The Second Circuit has held that a comparison of medical opinions during a period when a claimant was using [substances] to 'periods of sobriety,' even brief ones such as during hospitalization, constitutes substantial evidence to support a determination that a claimant would not be disabled were she to stop using drugs or alcohol." Rowe v. Colvin, No. 8:15-CV-00652 (TWD), 2016 WL 5477760, at*8 (N.D.N.Y. Sept. 29, 2016) (quoting Cage, 692 F.3d at 127 (holding that favorable mental health evaluations conducted during the plaintiff's inpatient programs, when the plaintiff had no access to drugs or alcohol, satisfied the substantial evidence standard)); see DiBenedetto v. Colvin, No. 5:12-CV-1528 (GLS), 2014 WL 1154093, at *3 (N.D.N.Y. Mar. 21, 2014) (holding that the ALJ's materiality determination was supported by substantial evidence where, among other things, the ALJ relied upon a positive evaluation of the plaintiff during a hospital stay where the plaintiff had no access to alcohol or illegal drugs).  Further, "it is within the ALJ's purview to consider pre-onset date evidence." James N. v. Comm'r of Soc. Sec., No. 3:18-CV-1324 (CFH), 2020 WL

1140498, at *5 (N.D.N.Y. Mar. 6, 2020); see 20 C.F.R. § 416.920(a)(3) ("We will consider all evidence in your case record . . . .").

Here, as the ALJ concluded, record evidence establishes that plaintiff's brief periods of abstinence from cannabis use demonstrate that she would not satisfy the paragraph B criteria of Listings 12.04 or 12.08 if she stopped using substances.  See T. at 140, 144.  Indeed, plaintiff's Four Winds records established that, during her approximately two-month inpatient treatment when she did not use cannabis, her GAF score increased significantly to 55.  See id. at 210.  The GAF is a scale ranging from 0 to 100, that "indicates the clinician's overall opinion of an individual's psychological, social, and occupational functioning."  Petrie v. Astrue, 412 F. App'x 401, 406 n.2 (2d Cir. 2011) (summary order).  "GAF scores from 61-70 indicate some mild symptoms or some difficulty in social, occupational, or school situations, but general functioning and the existence of some meaningful personal relationships . . . .  GAF scores between 51– 60 indicate that the individual has moderate symptoms or moderate difficulty in social, occupational, or school situations."  Id. (citations omitted).  Further, Dr. Van Meter's progress note dated January 29, 2013, characterized plaintiff's attention and concentration "by ability to attend and maintain focus" when her substance abuse was noted as being "[n]ot [e]vident" during the brief period following her previous November 26, 2012 progress note.  Id. at 282; see id. at 276.  Moreover, plaintiff's mental status examination upon discharge from Four Winds indicated that she appeared "well-nourished, well developed," with an "attentive attitude, appropriate motor behavior, spontaneous speech, normal mood, normal affect, appropriate perceptions, clear and organized thought process, appropriate thought content, no suicidal or homicidal

ideation, orientation to person/place/time/situation normal, normal attention span, fair insight and judgment, good impulse control." Id. at 209-10.  This evidence indicates that, during brief periods of sobriety, plaintiff's mental limitations improved and, although the evidence the ALJ relied on pre-dated the alleged onset date, the ALJ appropriately considered it in reaching his materiality determination.  See James N., 2020 WL 1140498, at *5; 20 C.F.R. § 416.920(a)(3).  In addition, Dr. VanMeter's progress notes show that, when plaintiff engaged in "mild" "[s]ubstance [a]buse," which Dr. VanMeter diagnosed as "[c]annabis [d]epdendence, [w]ithout [p]hysiological [d]ependence" and "[c]annabis dependence, uncomplicated," see id. at 285, 289, 291, 297, 300, 304, 305, 309, 311, 312, 316, 317, 320, 321, 324, 325, 328, 329, 332, 333, 336, 338, 340, 341, plaintiff's ability to concentrate and focus declined between 2012 and 2016.  Compare id. at 268, 277, 282, 285, 289, 290, 294, 297, 304 (describing plaintiff's attention and concentration as "characterized by ability to attend and maintain focus), with id. at 311, 316, 320, 324, 328, 332, 340, 481, 490, 499, 505, 509, 520, 536 (describing plaintiff's attention and concentration as "characterized by distractibility, poor attention and concentration.").

Moreover, Dr. Didio's opinion establishes that plaintiff had no impairment to "[u]nderstand and remember simple instructions" or "[c]arry out simple instructions"; mild limitation in her "ability to make judgments on simple work-related decisions" and "[u]nderstand and remember complex instructions"; and moderate limitations in her ability to "[c]arry out complex instructions" and "make judgments on complex work-related decisions."  T. at 658.  Further, Dr. Didio indicated that plaintiff had a moderate limitation in her ability to "[i]nteract appropriately with the public," "[i]nteract appropriately

with co-workers," and "[r]espond appropriately to usual work situations and to changes in a routine work setting"; and a marked limitation in her ability to "[i]nteract appropriately with supervisor(s)." Id. at 659. However, Dr. Didio opined that, absent substance abuse, plaintiff "would no longer meet a listing [and] have at most moderate paragraph B functional limitations," and "would be only mildly limited in her ability to understand, remember, or apply information and adapt or manager herself and would be only moderately limited in her ability to interact with others and concentrate, persist, or maintain pace." Id. at 662, 665. In addition, Dr. Ochoa's opinion provided that, even with plaintiff's substance use, her paragraph B criteria would be, at most, moderate, noting that plaintiff did not have any "understanding [or] memory limitations," and was only "[m]oderately limited" in her "ability to maintain attention and concentration for extended periods. Id. at 73. Moreover, Dr. Ochoa opined that plaintiff was able to "manage[]" her "sustained concentration and persistence" with "non-stimulant Strattera." Id. Dr. Ochoa also opined that, although plaintiff had "adaption limitations" when she used substances, she was "[n]ot significantly limited in her ability to respond appropriately to changes in the work setting." Id. at 74. Thus, the ALJ's materiality determination was supported by substantial record evidence.

## 2. The ALJ's RFC Determination

Liberally construing plaintiff's pro se brief, she contends that the ALJ's RFC determination is not supported by substantial evidence because it is contradicted by Dr. VanMeter's June 7, 2018 medical opinion. See Dkt. No. 15 at 5. The Court disagrees.

Here, the ALJ considered plaintiff's history of substance abuse as well as her history of mental illness and correctly determined that, if she stopped the substance abuse, she would have the RFC to "perform a full range of work at all exertional levels but would only have sufficient attention and concentration to perform the simple, routine tasks associated with unskilled work at an SVP of 1 or 2 and could only tolerate occasional interaction with supervisors, co-workers, and the public." T. at 26. The ALJ correctly observed that the record evidence established that when plaintiff abstains from using substances, her symptoms, including her ability to pay attention, maintain concentration, and interact socially improve to a level of, at most, moderate limitation. See id. at 209-10, 282. Indeed, as the ALJ noted, plaintiff's GAF score improved 20 points from 35 to 55 between the time she entered her inpatient treatment at Four Winds and the time of her discharge—while she abstained from using substances such as cannabis. See id. at 210. "While the ALJ is not allowed to rely on any test score alone," Williams v. Colvin, No. 3:13-CV-0897 (GTS), 2014 WL 4146191, at *8-9 (N.D.N.Y. Aug. 19, 2014) (internal quotation marks and citations omitted), plaintiff's improved GAF scores, as well as improved mental status examinations during periods of abstinence from substance use, are consistent with the moderate limitations included by the ALJ in his RFC determination. See id. Moreover, as discussed above, Dr. Didio's and Dr. Ochoa's opinions established that plaintiff would have, at most, moderate limitations under the paragraph B and C criteria in the absence of substance use, for which the RFC accounts. See id. at 73-74, 662, 665. Thus, the ALJ's RFC determination was supported by substantial evidence.

### 3. Plaintiff's New Evidence

Plaintiff's new evidence does not alter the Court's conclusions as to the ALJ's materiality or RFC determinations.  Plaintiff submits, as new evidence, Dr. VanMeter's June 7, 2018, medical source statement and employment evaluation.  In his medical source statement, dated June 7, 2018, Dr. VanMeter checked off that plaintiff had "[m]arked" limitations in her ability to "[u]nderstand and remember simple instructions"; "[c]arry out simple instructions"; and "make judgments on complex work-related decisions"; and "[e]xtreme" limitations in her ability to "make judgments on simple work-related decisions"; "[u]nderstand and remember complex instructions"; and "[c]arry out complex instructions."  Id. at 12.  Further, Dr. VanMeter checked that plaintiff had "[m]arked" limitations in her ability to [i]nteract appropriately with "the public," "supervisor(s)," and "co-workers"; and an "[e]xtreme" limitation in her ability to "[r]espond appropriately to usual work situations and to changes in a routine work setting."  Id. at 13.  Dr. VanMeter stated that he found that plaintiff's "past limitations" to be present between "2013-present."  Id.  Thereafter, in response to the question of whether, if plaintiff's "impairment(s) include alcohol and/or substance abuse, do these impairments contribute to any of the claimant's limitations as set forth above?  If so, please identify and explain what changes you would make to your answers if the claimant was totally abstinent from alcohol and/or substance use/abuse," Dr. VanMeter replied that "[plaintiff] is currently clean and sober from all substance and still demonstrates all the clinical symptoms described above."  Id. (emphasis added).  Plaintiff also submitted a document titled Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination, which was completed by Dr.

VanMeter on June 7, 2018.  See T. at 15-17.  However, this second document does not

provide any opinions with respect to plaintiff's limitations in the absence of substance

use.  See id. at 15-16 (listing plaintiff's conditions, including substance use disorder and

opining that "plaintiff is unable to work at present time due to current severity of her

chronic mental illness.").

Here, even considering this newly submitted evidence in the administrative

record, substantial evidence still supports the ALJ's materiality and RFC determinations.

See Lesterhuis v. Colvin, 805 F.3d at 87; Canady, at *10.  As an initial matter, contrary

to plaintiff's contention, Dr. VanMeter's medical source statement does not expressly

provide that, even without substance use, the limitations described in his medical

source statement exist.  See Dkt. No. 15 at 4.  Rather, plaintiff's contention in this

regard is tenuous at best because Dr. VanMeter's medical source statement opines

only as to plaintiff's "current" symptom profile including substance use as of June

2018—after the ALJ hearing decision—but does not make clear that he intended to

opine as to her past symptomology even during her periods of abstinence from

substance use.  See T. at 13.  Further, the marked and extreme limitations contained in

Dr. VanMeter's opinion are contradicted by the record evidence, including Dr.

VanMeter's own clinical findings from January 29, 2013, that, absent substance use,

plaintiff's mental limitations are reduced.  See id. at 209-10; 282.[9]  Moreover, Dr.

---

[9]  To the extent that Dr. VanMeter's belated medical source statement is unsupported by and/or
inconsistent with the record evidence, including his own clinical findings, the Court concludes that, insofar
as plaintiff's pro se pleading may be read as arguing that Dr. VanMeter's opinion is entitled to controlling
weight pursuant to the treating physician rule, that argument lacks force.  See 20 C.F.R. § 404.1527(c)(2);
id. § 416.927(c)(2); see also Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000) (stating that the "treating
physician rule . . . mandates that the medical opinion of a claimant's treating physician is given controlling
weight if it is well supported by medical findings and not inconsistent with other substantial record
evidence."); Jill D. v. Berryhill, 5:17-CV-1308 (CFH), 2019 WL 936523, at *3 (N.D.N.Y. Feb. 26, 2019)

VanMeter's medical source statement provides a confused description of plaintiff's purported mental limitations, including that she has only a "marked" limitation in her ability to make complex work-related decisions, while having an "extreme" limitation in her ability to make judgments on simple work-related decisions.  T. at 12.  Thus, as the ALJ's materiality and RFC determinations were supported by substantial evidence, and plaintiff's new evidence fails to establish a "reasonable possibility that the new evidence would have influenced the [ALJ] to decide claimant's application differently," the ALJ's determination is affirmed.  Patterson, 24 F. Supp. 3d at 373 (internal quotation marks and citation omitted)).

### V. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that plaintiff's motion (Dkt. No. 15) is **DENIED** and it is further

**ORDERED**, that the Commissioner's motion (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 15, 2020
    Albany, New York

---

("[The treating physician] rule applies equally to retrospective opinions given by treating physicians.") (internal quotation marks and citation omitted)).